**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

LINDA MULLINS,

    Plaintiff,

v.                                    Civil Action No. 3:05CV888

EQUIFAX INFORMATION SERVICES,
LLC, TRANS UNION, LLC, EXPERIAN
INFORMATION SOLUTIONS, LLC, MBNA
AMERICA BANK, N.A., SEARS, ROEBUCK
AND CO., CITIBANK (SOUTH DAKOTA),
N.A., CACV OF COLORADO, LLC,

    Defendants.

**MEMORANDUM OPINION**

The Plaintiff in this action, Linda Mullins ("Mullins"), has sued a number of defendants, alleging common law defamation as well as violations of the Fair Credit Reporting Act and the Fair Debt Collection Practices Act.  <u>See</u> 15 U.S.C. § 1681, <u>et</u> <u>seq.</u>  This matter is currently before the Court on a motion to transfer venue from the Richmond Division to the Alexandria Division by MBNA America Bank, N.A. ("MBNA").  Citibank (South Dakota), N.A. ("Citibank"),[1] CACV of Colorado, LLC ("CACV"), and Experian Information Solutions, Inc. ("Experian") have joined MBNA's motion to transfer and adopt its memorandum of law in support thereof.[2]

_____

[1]The named defendant is Citibank (South Dakota), N.A., but the movant is Citibank USA, National Association.

[2]The Plaintiff has also sued Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("Trans Union"), and Sears, Roebuck and Co ("Sears").

1

Additionally, CACV has moved to compel arbitration.

_____

Count One alleges that the credit reporting agencies (Equifax, Experian, and Trans Union), as defined by the FCRA, violated 15 U.S.C. § 1681e(b), by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning the Plaintiff.

Count Two alleges that the credit reporting agencies violated 15 U.S.C. § 1681i, (1) by failing to delete or correct inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies and after conducting a reinvestigation, (2) by failing to maintain reasonable procedures by which to filter and verify disputed information in the Plaintiff's credit file, (3) by failing to note that disputed accounts were in dispute, and (4) by failing to conduct a reasonable investigation with regard to Plaintiff's disputes.

Count Three alleges that the furnishers of information (MBNA, Sears, Citibank, and CACV), as defined by the FCRA, defamed the Plaintiff.

Count Four alleges that the furnishers of information violated 15 U.S.C. § 1681s-2(b), (1) by publishing inaccurate and defamatory tradelines within the Plaintiff's credit file to the credit reporting agencies without also including a notation that the debt was disputed, (2) by failing to fully and properly investigate the Plaintiff's disputes, (3) by failing to review all information regarding the same, and (4) by failing to correctly report the results of an accurate investigation to the credit reporting agencies.

Count Five alleges that CACV, a debt collector as defined by the FDCPA, violated the FDCPA (1) by using a false, deceptive, or misleading representation or means in the collection of a debt (15 U.S.C. § 1692e), (2) by publishing a false representation of the character, amount, or legal status of a debt (15 U.S.C. § 1692e(2)), (3) by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed (15 U.S.C. § 1692e(8)), and by using unfair or unconscionable means to collect or attempt to collect any debt (15 U.S.C. § 1692f).

## STATEMENT OF FACTS

### A.   Facts Alleged in Complaint

According to the Complaint, in late 2003, the Plaintiff became aware that MBNA was reporting a derogatory tradeline on her consumer credit report with respect to an MBNA account, for which MBNA indicated the Plaintiff was contractually liable.  MBNA had assigned this account to CACV, and CACV was reporting a second derogatory tradeline based on this same account.  Additionally, the Plaintiff learned that Citibank and Sears were reporting a derogatory tradeline based on a Sears account, for which they reported she was contractually liable.

The Plaintiff denies that she was an obligor on the MBNA, Sears, and CACV accounts.  According to the Plaintiff she contacted MBNA, Sears, Citibank, and CACV, to inform them of the mistake.  She also wrote multiple letters to Equifax, Experian, and Trans Union over a two year period, disputing these debts and demanding that the derogatory tradelines be removed from her credit report.  The Plaintiff then alleges that the credit reporting agencies failed to transmit all relevant information to the furnishers and instead transmitted incomplete and insufficient Automated Credit Dispute Verifications ("ACDVs") to the furnishers.  The Plaintiff further alleges that the furnishers failed to review original documents, contact the Plaintiff directly, or to perform a reasonable investigation into the substance of the Plaintiff's

disputes, and directed the credit reporting agencies that the derogatory notations on the Plaintiff's credit report should not be removed. The credit reporting agencies subsequently notified the Plaintiff that the disputed accounts had been verified and would remain on her credit report.

### B.  Facts Relevant to Motion to Transfer

#### 1.  Parties

The Plaintiff and her husband have lived in Leesburg, Virginia for a number of years, which is within the geographic boundaries of the Alexandria Division. The defendants in this case are foreign corporations or national banks, whose principal places of business are not located within Virginia. However, the defendants that have joined this motion have their registered or statutory agents within the geographic limitations of the Richmond Division. The Plaintiff's lead counsel (Mr. Bennett) is located in Newport News, Virginia, though the Plaintiff also has counsel (Mr. Erausquin) in Fairfax, Virginia. As for the defendants, MBNA and Citibank have counsel in Washigton, D.C., CACV has counsel in Richmond, and Experian has counsel in both locations.

#### 2.  Witnesses

According to MBNA, the Plaintiff has identified a number of potential witnesses located within the Alexandria Division: the Plaintiff and her husband (Leesburg), Beverly H. Morgan

(Middleburg), Gilbert Irwin (Manassas), and employees of BB&T-DDA.[3]
The Plaintiff also identified employees of the Bank of Clarke
County as potential witnesses.  According to MBNA, this bank is
within the Western District of Virginia, but is located only a few
miles from the Alexandria Division.  However, the Plaintiff has
represented that she is aware of no witness within the Alexandria
Division who is unwilling to testify in Richmond.

The Plaintiff also identified, as potential witnesses,
employees of Capital One Bank in Glen Allen, which is within the
Richmond Division.  MBNA argues that any testimony from these
witnesses would be irrelevant because Capital One is not a
defendant and because there has been no allegation that Capital One
either denied the Plaintiff credit or offered her credit on
unfavorable terms.  The Plaintiff contends that this evidence would
be relevant because this action is partly based on the credit
reporting agencies' failure to reinvestigate a Capital One account.
Additionally, however, the Plaintiff points to the fact that MBNA's
counsel stated at the Rule 16(b) initial pretrial conference that
it planned to present evidence of the Capital One reporting as a
defense of alternate causation of damages.  There is no dispute
that the relevant evidence and witnesses from Capital One are

---

[3]Apparently, Plaintiff indicated that these witnesses are
located in North Carolina, but MBNA contends that the employees in
the Fairfax, Virginia offices were those that denied the Plaintiff
credit.

located in Richmond.

With respect to damages, MBNA contends that most of the witnesses will be located within the Alexandria Division.  The alleged damages relate to the approaching ejectment of the Plaintiff from her place of residence.  Additionally, MBNA speculates that the Plaintiff's mental health care providers are likely located within the Alexandria Division.

### 3.   Events Giving Rise to Claim

By all appearances, the alleged inaccurate information in the Plaintiff's credit report originated when the Plaintiff's husband filed for bankruptcy in the Eastern District of Virginia, Alexandria Division.  And, MBNA contends that many of the events giving rise to the Plaintiff's causes of action occurred within the Alexandria Division: (1) the Plaintiff sent complaints to the credit reporting agencies from her residence in Leesburg, (2) the Plaintiff had telephone communications with MBNA from her residence in Leesburg, and (3) the alleged injuries were incurred in the Alexandria Division.

The Plaintiff counters that the events giving rise to this action did not occur in the Alexandria Division, and indeed did not occur in the Eastern District of Virginia or even the Commonwealth of Virginia.  Instead of focusing on her own conduct, the Plaintiff points to the conduct of the defendants -- failure to conduct reinvestigations of credit disputes and the improper forwarding of

verification forms -- as the key events giving rise to her claims. MBNA performs reinvestigations in Wilmington, Delaware, and Citibank outsources its investigations to India.  It appears that CACV operates out of Colorado.  The verification forms were forwarded to the credit reporting agencies in various different states: Equifax in Jamaica or the Philippines, Trans Union in California or Pennsylvania, and Experian in Texas.

## DISCUSSION

### I.  Motion to Transfer

MBNA moves the Court to transfer this action from the Richmond Division to the Alexandria Division pursuant to Local Rule 3(C), 28 U.S.C. § 1391, and 28 U.S.C. § 1404.  MBNA has failed to distinguish between a transfer based on improper venue and a transfer for the convenience of the parties and witnesses. Consequently, MBNA has conflated and confused the issues in its brief.  Ultimately, while MBNA cites to several venue provisions, its only real argument for transfer is the convenience of the parties and witnesses under 28 U.S.C. § 1404(a).  The other provisions are inapposite.

### A.  Improper Venue

Congress has provided separate transfer of venue provisions for improper venue and for convenience of the parties and witnesses.  Under 28 U.S.C. § 1406(a), "[t]he district court of a

7

district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "Although both sections were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege."  <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 634 (1964).

MBNA states that venue is improper in the Richmond Division, but never gets beyond that bare assertion.  In its brief, MBNA makes much of the fact that Magistrate Judge Dohnal did not address Local Rule 3(C) in an opinion denying transfer in <u>Poling v. Trans Union LLC</u> (Civil Action No. 3:05cv432).  Plaintiff's Memorandum, Exhibit A.  Local Rule 3(C) states, in relevant part, that

> Civil actions for which venue is proper in this district shall be brought in the proper division, as well.  The venue rules in 28 U.S.C. § 1391 et seq. also shall apply to determine the proper division in which an action shall be filed.  For the purpose of determining the proper division in which to lay venue, the venue rules stated in 28 U.S.C. § 1391 et seq. shall be construed as if the terms 'judicial district' and 'district' were replaced with the term 'division.'

MBNA suggests that applying Local Rule 3(C) will lead the Court to conclude that venue is improper in this division.  However, MBNA did not explain how or why the Court would reach that conclusion.

Applying Local Rule 3(C) to § 1391(b), the venue provision with respect to divisions would read as follows:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a [division] where any defendant resides, if all defendants reside in the same State, (2) a [division] in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a [division] in which any defendant may be found, if there is no [division] in which the action may otherwise be brought.

The Court should also apply Local Rule 3(C) to § 1391(c), which would read as follows:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any [division] in which it is subject to personal jurisdiction at the time the action is commenced.  In a State which has more than one [division] and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any [division] in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that [division] were a separate State, and, if there is no such [division], the corporation shall be deemed to reside in the [division] within which it has the most significant contacts.

As for the transfer provisions, the Court need not apply Local Rule 3(C) because § 1406(a) and § 1404(a) already refer to both districts and divisions.

Assessment of the record makes it clear that laying venue in

the Richmond Division was not improper.  MBNA and the defendants joining its motion are corporations, and thus, they are deemed to reside in any division in which they are subject to personal jurisdiction at the time the action was commenced.[4]  The defendants have not argued that they were not subject to personal jurisdiction in the Richmond Division at the commencement of the action.  And, indeed, it appears that all of the defendants were doing business in the Richmond Division and had registered or statutory agents for service of process in the Richmond Division.  Consequently, the defendants resided in the Richmond Division, and the Plaintiff may properly lay venue in the Richmond Division.  Local Rule 3(C); 28 U.S.C. § 1391(b)(1).  There is no doubt that venue would also be proper in the Alexandria Division under this same analysis, and indeed probably under § 1391(b)(2) as well because it appears that a substantial part of the events giving rise to this claim occurred there.  However, venue is not improper in the Richmond Division.

Since venue is not improper in the Richmond Division, transfer would not be appropriate under § 1406(a).  MBNA fails to ever mention § 1406(a), but that would have been the proper

---

[4]None of the defendants contested personal jurisdiction by filing a motion pursuant to Fed. R. Civ. P. 12(b)(2), and thus they have waived that defense, but the statute specifically references the commencement of the action as the relevant time period.  Thus, the defendants' waiver on this issue is irrelevant.

The defendants have also waived their rights to seek dismissal for improper venue under Rule 12(b)(3).  But waiver of the Rule 12 defense does not amount to a waiver of the right to seek transfer.

transfer provision had MBNA successfully demonstrated improper venue in the Richmond Division.  The bottom line, however, is that MBNA's hand wringing over the fact that Judge Dohnal never discussed Local Rule 3(C) turns out to be much ado about nothing.[5]

## B.   Motion, Consent, or Stipulation of All Parties

MBNA also suggests, in a brief reference, that 28 U.S.C. § 1404(b) supports its motion to transfer.  Section 1404(b) provides that "[u]pon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district."  Obviously, the missing element for this statute to apply to this case is the motion, consent, or stipulation of all parties.  The Plaintiff opposes transfer from the Richmond Division to the Alexandria Division, and a number of defendants have declined to join MBNA's motion.  Thus, § 1404(b) does not apply here.

## C.   Convenience of the Parties and Witnesses

It is necessary next to consider whether transfer would be appropriate under § 1404(a), for the convenience of the parties and witnesses and in the interest of justice.  Section 1404(a) "is intended to place discretion in the district court to adjudicate

_____

[5]At oral argument, MBNA conceded that it is subject to personal jurisdiction in the Richmond Division and thus that venue is proper.

motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh, Inc., 487 U.S. 22, 29 (1988)(quoting Van Dusen, 376 U.S. 612). The moving party bears the burden of demonstrating that a transfer of venue is warranted under § 1404(a). The Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc., 387 F.Supp.2d 564, 566 (E.D. Va. 2005). Indeed, the moving party must show that the balance of convenience among the parties and witnesses "is beyond dead center, and strongly favors the transfer sought." Medicenters of America, Inc. v. T & V Realty & Equip. Corp., 371 F.Supp. 1180, 1184 (E.D. Va. 1974)(granting transfer from Richmond Division to Norfolk Division).

In exercising its discretion under the statute, it is necessary to "consider and balance" a number of factors, including:

> (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.

One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp., 312 F.Supp.2d 824, 828 (E.D. Va. 2004) (citing BHP Int'l Inv., Inc. v. Online Exch., 105 F.Supp.2d 493, 498 (E.D. Va. 2000)). The statute provides no guidance as to the weight that should be given to the various factors, and thus "much necessarily must turn on the particular facts of each case" and "the trial court must consider

12

all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3847 (2005). Depending on the circumstances of the case, "the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction." 15 Wright, Miller & Cooper, § 3854. The principal factors to consider, however, are a plaintiff's choice of forum, witness convenience, access to sources of proof, party convenience, and the interest of justice. Koh v. Microtek Int'l, Inc., 250 F.Supp.2d 627, 633 (E.D. Va. 2003).[6]

### 1.   Plaintiff's Choice of Forum

The first factor to be considered is the level of deference that should be given to the Plaintiff's choice of this forum in which to adjudicate its claims. "In analyzing the propriety of a transfer, plaintiff's choice of forum is typically entitled to substantial weight; however, if 'a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight.'" Telepharmacy Solutions, Inc. v. Pickpoint

---

[6] The ease of access to sources of proof refers principally to the discovery component of litigation and is considered as a party convenience factor. The cost of obtaining attendance of witnesses and the availability of compulsory process are components of both party convenience and the interest of justice factors.

Corp., 238 F.Supp.2d 741, 743 (E.D. Va. 2003) (quoting Cognitronics Imaging Sys. v. Recognition Research Inc., 83 F.Supp.2d 689, 696 (E.D. Va. 2000)).  When the plaintiff's choice of forum is neither the nucleus of operative facts, nor the plaintiff's home forum, the plaintiff's choice is accorded less weight.  Intranexus, Inc. v. Siemens Medical Solutions Health Services Corp., 227 F.Supp.2d 581, 583 (E.D. Va. 2002).  But, even then, the plaintiff's choice of forum is certainly a relevant consideration so long as there is a connection between the forum and the plaintiff's claim that reasonably and logically supports the plaintiff's decision to bring the case in the chosen forum.

Based on the facts recited by the parties in their pleadings, it would appear that the Plaintiff's claims have little nexus with the Richmond Division.  The only facts and witnesses associated with the Richmond Division are those connected to a disputed Capital One account.  Capital One is not a defendant, however, and it is not entirely clear whether or how the actions of the credit reporting agencies with respect to this account form the basis of the Plaintiff's claims against them.  Though, it appears that MBNA may argue a defense of alternative causation based on reports associated with the account.  Nevertheless, the Richmond Division could hardly be characterized as the nucleus of operative fact.

Given that the Richmond Division is not the Plaintiff's home forum or the nucleus of operative fact, the Plaintiff's choice of

14

forum should be accorded little weight in balancing the convenience factors and the interest of justice. However, the Plaintiff's choice of forum remains a relevant consideration, especially since MBNA and the other defendants bear the burden of proving that the balance of factors weighs in favor of transfer. If the defendants cannot demonstrate that the balance of factors strongly favors transfer, then the Plaintiff's choice of forum should be respected.

### 2.   Convenience of the Parties

When weighing the convenience of the parties, "[t]he logical starting point is a consideration of the residence of the parties." U.S. Fidelity & Guaranty Corp. v. Republic Drug Co., Inc., 800 F.Supp. 1076, 1080 (E.D.N.Y. 1992). However, "residence is not a controlling factor if the convenience of witnesses and the interest of justice point strongly in a contrary direction." 15 Wright, Miller & Cooper, § 3849. In most cases, a plaintiff cannot realistically be heard to argue that a transfer to the plaintiff's home district or division will impose a great inconvenience. Likewise, however, where the defendant proposes a transfer to a district or division other than the one in which it resides, it can hardly be said to have maximized its convenience. See 17 Moore's Federal Practice § 111.13(1)(e) (Matthew Bender 3ed. 2005).

More importantly, however, "[a] defendant moving for transfer must show that the original forum is inconvenient for it and that plaintiff would not be substantially inconvenienced by a transfer.

15

It is not enough for defendant to argue only that plaintiff's choice of forum is inconvenient for the plaintiff."  15 Wright, Miller & Cooper § 3849.  See also American Can Co. v. Crown Cork & Seal Co., Inc., 433 F.Supp. 333, 338 (E.D. Wis. 1977)("The defendant cannot assert plaintiff's inconvenience in support of a motion to transfer."); James v. Norfolk & Western Ry. Co., 430 F.Supp. 1317, 1319 (S.D. Ohio 1976)("The defendant cannot assert plaintiff's inconvenience in support of a motion to transfer. Assuming arguendo, that the plaintiff has inconvenienced himself in this case, he may do so if he so desires.  Thus the plaintiff's residence is more a consideration in determining whether hardship will result to the plaintiff should the transfer be granted rather than a factor to be weighed in the movant's favor.").

Here, the Plaintiff resides in the Alexandria Division, and thus she cannot plausibly argue that a transfer to the Alexandria Division would be an inconvenience to her.  And, indeed, she does not so argue.  However, MBNA and the other defendants have not argued for a transfer to their home districts, but rather argue for a transfer to a different division within the Eastern District of Virginia.  Given that all the defendants reside in different districts, perhaps MBNA thought a motion to transfer to another district would be futile.[7]  Even so, it is disingenuous for MBNA to

---

[7]"[W]hen transfer would be more convenient for one defendant, but less convenient for another defendant, plaintiff's choice of forum has been sustained."  15 Wright, Miller & Cooper § 3849.

argue that a transfer to the Alexandria Division would substantially alleviate the burden of litigating in a foreign forum.  The Alexandria and Richmond Divisions are not so far from one other to make a substantial difference.  MBNA obviously recognizes the weakness in such an argument because it literally commits only two sentences in its brief to that assertion.  Additionally, while Wilmington, Delaware is closer to Alexandria than Richmond, there has been no showing as to whether the other defendants, who reside in a number of different locations around the country, would be inconvenienced by a transfer to Alexandria.

If the defendants are only going to pay mere lip service to this factor, the Court need not give it any weight.  Thus, in light of the fact that the Plaintiff would not be inconvenienced by a transfer, the factor is essentially neutral.[8]

### 3.   Convenience of Witnesses

The convenience of the witnesses is of considerable importance in determining whether a transfer of venue is appropriate under Section 1404(a).  When reasonably possible, live testimony is preferred to other means of presenting evidence.  Ramsey v. Fox News Network, LLC, 323 F.Supp.2d 1352, 1356 (N.D. Ga. 2004).

---

[8]The convenience of counsel is generally accorded little or no weight in the transfer analysis.  See In re Volkswagen AG, 371 F.3d 201, 206 (5th Cir. 2004)("The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a).").

Typically, however, a distinction is drawn between party and non-party witnesses. "Party witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses." Id. The convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer venue. Koh, 250 F.Supp.2d at 637.

"The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Id. at 636. Naturally, in contrast to witness testimony that is merely cumulative, "greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue." Id. Witness convenience is "not merely a battle of numbers favoring the party that can provide the longest list of witnesses it plans to call." Anderson v. Century Products Co., 943 F.Supp. 137, 149 (D.N.H. 1996).

Additionally, the moving party must demonstrate "whether that witness is willing to travel to a foreign jurisdiction." Thayer/Patricof Education Funding, LLC v. Pryor Resources, Inc., 196 F.Supp.2d 21, 33 (D.D.C. 2002). Merely stating that potential witnesses reside beyond a forum's subpoena power does little to

assist the court in weighing the convenience of the witness and the necessity of compulsory process.  See id.  When the "appearance of witnesses can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action, this factor becomes less important."  Anderson, 943 F.Supp. at 149.

Although live testimony is the preferred mode of presenting evidence, when non-party witnesses are unavailable to give live testimony, videotaped depositions often are sufficient.  Somewhat less weight is given to witness inconvenience when a party is unable to demonstrate with any particularity that videotaped deposition testimony will be inadequate, and that live testimony is critical.  See Koh, 250 F.Supp.2d at 637; Acterna, LLC v. Adtech, Inc., 129 F.Supp.2d 936, 939 (E.D. Va. 2001).  This is especially so when the witness is not central to the case.  "[L]oss of live testimony of less central witnesses is not so great a price for honoring plaintiff's choice."  Anderson, 943 F.Supp. at 149.

In this case, the Plaintiff has represented that she will make all of her party witnesses available at trial in the Richmond Division.  Presumably, MBNA and the other defendants will follow suit, and make their party witnesses available at trial.  At present, they have not indicated otherwise. As for the third-party witnesses, MBNA has failed to provide the Court with sufficient information, by affidavit or otherwise, that would permit the Court

to assess the materiality and inconvenience to individual witnesses. All MBNA has provided is a list of potential witnesses identified by the Plaintiff, and then simply notes that their residence is in the Alexandria Division. MBNA has not met its burden of showing that the inconvenience to the witnesses of travel to the Richmond Division requires a transfer.[9]

### 4. Interest of Justice

Under § 1404(a), the Court must consider the "interest of justice" in determining whether to transfer venue. The interest of justice encompasses public interest factors aimed at "systemic integrity and fairness." Stewart Org., Inc., 487 U.S. at 30. See also Brock v. Entre Computers Centers, Inc., 933 F.2d 1253, 1258 (4th Cir. 1991). Judicial economy and the avoidance of inconsistent judgments are prominent among the principal elements of systemic integrity. See U.S. Ship Management, Inc. v. Maersk Line, Ltd., 357 F.Supp.2d 924, 937-938 (E.D. Va. 2005). When determining whether a fair proceeding requires a transfer of venue, courts often consider docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest

---

[9]MBNA does not mention lack of compulsory process in its argument. To the extent that it is relevant, however, it appears that some of the witnesses residing in the Alexandria Division may be within reach of the Court's 100 mile subpoena power. See Fed. R. Civ. P. 45(b)(2). The distance between Richmond and Alexandria is approximately 102 miles.

in avoiding unnecessary conflicts of law.  Carpenter v. Parker Drilling Offshore USA, Inc., ___ F.Supp.2d ___, 2005 WL 1432373, *1 (E.D. La. 2005)(citing Gulf Oil Corp. v. Gilbert, 330 U.S. 505, 509 (1947)).  Systemic integrity must also necessarily take account of a party's attempt to game the federal courts through forum manipulation.  See The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F.Supp.2d 12, 15 (D. Mass. 2002).

In this case, MBNA has raised no interest of justice factors in arguing for transfer.  There are no other actions pending between these parties, so there are no concerns of inconsistent judgments.  The Plaintiff cites docket conditions as one factor weighing in her favor, though she has not made any showing that the docket conditions are substantially different.[10]  Likewise, the Plaintiff suggests that this Court has developed expertise with respect to Fair Credit Reporting Act and Fair Debt Collection Practices Act cases because more have been filed here than in any other division.  However, there has been no showing that the Richmond Division's expertise is such that it would support a transfer.

The Plaintiff also suggests that MBNA is forum shopping.

---

[10] See Cognitronics, 83 F.Supp.2d at 699 ("Docket conditions, while a consideration, cannot be the primary reason for retaining a case in this district.  This Court cannot stand as a willing repository for cases which have no real nexus to this district. The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner.").

However, the Plaintiff raises no facts from which the Court could conclude that MBNA is forum shopping, except for the motion to transfer.  A motion to transfer cannot be equated with forum shopping.

### C.   Conclusion: Motion to Transfer

There is no doubt that the Plaintiff would not be inconvenienced by a transfer to the Alexandria Division.  So, a transfer would not amount to shifting the inconvenience from one party to another.  MBNA and the other defendants, however, have not met their burden of demonstrating that the convenience of the parties and witnesses and the interest of justice weigh strongly in favor of transfer.  While it is true that the Plaintiff's choice of division within the Eastern District should not be given much weight, MBNA has failed to show that it would be inconvenienced by litigation in the Richmond Division.  The Plaintiff is entitled to inconvenience herself through her choice of forum if she so desires.  Additionally, MBNA has not shown that the non-party witnesses would be substantially inconvenienced by having to travel to the Richmond Division, or that compulsory process would be necessary or unavailable.  MBNA also has failed to provide the Court with any information as to the relevance of any individual witness' testimony, such that the Court could form an opinion as to materiality.  Finally, there are no interest of justice factors that weigh heavily with respect to this transfer analysis.

While it would have made sense for this action to have been filed in the Alexandria Division, and the likely reason for filing here is the fact the fact that the Plaintiff's counsel prefers the Richmond Division, that is not an adequate basis for transfer.  For all the foregoing reasons, the defendants' motions to transfer this action from the Richmond Division to the Alexandria Division will be denied.

### Conclusion

For the foregoing reasons, the defendants' motions to transfer (Docket Nos. 32, 46, 49, 50) are denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

/s/

Robert E. Payne
United States District Judge


Date: April 28, 2006
Richmond, Virginia